IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WELLS FARGO BANK, N.A.

          Appellant,

v.                                                 CV 07-123 MCA/CEG

PILAR MERCEDES JIMENEZ,

          Appellee.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on an appeal from a Memorandum Opinion entered by the United States Bankruptcy Court for the District of New Mexico on December 21, 2007.  *See In re Jimenez*, 335 B.R. 450 (Bankr.D.N.M. 2005).  The Memorandum Opinion appealed from granted Pilar Mercedes Jimenez's ("Jimenez") cross-motion for summary judgment, finding that Wells Fargo willfully violated the automatic stay by placing an administrative freeze on Jimenez's accounts.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the District Judge assigned to this case has referred the appeal for a report and recommendation.  *See Doc. 3*.  For the reasons set forth below, I recommend that the decision of the bankruptcy court be affirmed.

## I.  Background

### A.  Factual Background

On July 5, 2005, Jimenez filed for Chapter 7 bankruptcy.  On the date of filing, Jimenez had checking and savings accounts with Wells Fargo.  Her checking account contained $5,173.33 and her saving account contained $649.18.  *See Doc. 1* of 07-05-15473; *Doc. 13* at 5.  On July 14, 2005, Jimenez amended Schedules B and C of her Voluntary Petition, claiming the total

amount in her Wells Fargo accounts exempt.  *See Doc. 6* of 07-05-15473.  Wells Fargo was not a creditor of Jimenez.

By scanning through electronic bankruptcy filings on ACE, Wells Fargo learned of Jimenez's Chapter 7 filing on July 8, 2007.  *Doc. 8* of 07-05-15473 at Tafoya Affidavit.  On that same date, Wells Fargo placed an administrative freeze on Jimenez's accounts, denying her access to those funds.  *Id.*  On July 8, 2007, Wells Fargo wrote a letter to Jimenez's attorney, notifying her of the administrative freeze and stating that "Wells Fargo is required by operation of Sections 541 and 542 of the Bankruptcy Code to act in good faith and to preserve the status quo and so must follow the trustee's direction with regard to the Estate Funds."  *Id.* at Ex. B.  On July 8, 2007, Wells Fargo also wrote a letter to the Trustee, advising her of the administrative freeze and stating that "the Estate Funds will remain in bankruptcy status until the earlier of receipt of direction from you on their disposition or September 12, 2005, which is 31 days after the scheduled First Meeting of Creditors."  *Id.* at Ex. A.

After learning of the administrative freeze, Jimenez's counsel made several attempts to have Wells Fargo release the funds.  *See Doc. 10* of 07-05-15473 at Exs. 1-4.  On July 11, 2005, Jimenez filed an adversary Complaint for Turnover of Property and Damages.  On July 15, 2005, in response to an emergency motion for turnover, the Trustee authorized Wells Fargo to release $4,000 to Jimenez.  *Doc. 13* of 07-05-15473 at Tafoya Affidavit.  After receiving instructions from the Trustee, Wells Fargo then allowed Jimenez to access the released funds.  *Id.*

## B.  Procedural Background

In its Memorandum Opinion, the bankruptcy court concluded that: (i) Jimenez had standing to assert her claims against Wells Fargo based on the denial of access to funds she

2

claimed exempt,  (ii) the administrative freeze expressly violated the automatic stay provision of

11 U.S.C. § 362(a)(3), and (iii) Wells Fargo did not need to freeze Jimenez's accounts to comply

with 11 U.S.C. § 542.  *See In re Jimenez*, 335 B.R. at 454-462.  More specifically, regarding the

violation of § 362(a)(3), the bankruptcy court concluded that this case presented a narrow issue

not yet considered by the Tenth Circuit, "whether a depository bank, without a right of setoff, can

freeze funds in a Chapter 7 debtor's bank account until either the bank receives instruction from

the trustee or the funds are abandoned by the trustee or the period for objections to exemptions

has passed." *Id.* at 459.  In finding that Wells Fargo expressly violated § 362(a)(3), the

bankruptcy court concluded that *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), was

not directly applicable because Wells Fargo was not a creditor with a right to setoff.  *Id.* at 457-

58.  As it explained, § 362(a)(7) was at issue in *Strumpf* and the Supreme Court's characterization

of bank accounts as promises to pay and not property of the estate was dicta.   *Id.* at 458.

Regarding Wells Fargo's § 542 argument, the bankruptcy court held:

> While it is true that Wells Fargo must comply with the turnover
> provision if it acquires actual knowledge of the bankruptcy, in this
> case [Wells Fargo] did not need to freeze the accounts to protect
> itself, because it is not a creditor and it would have been protected
> by § 542(c). Wells Fargo appears to be using a disingenuous sense
> of obligation put into place by its policy of seeking out knowledge
> of bankruptcy filings by its account holders to justify the freezing of
> accounts. The Court wonders if Wells Fargo had really intended to
> follow § 542(b), why it did not close the accounts and transfer the
> funds immediately to the Trustee?  Instead, Wells Fargo created an
> obligation to freeze the funds and in the mean time, presumably,
> earn interest on those funds.

*Id.* at 462.

        After granting Jimenez's cross motion for summary judgment, the bankruptcy court held

an evidentiary hearing to determine if damages were warranted.  *See Doc. 64* of 07-05-15473.

The bankruptcy court found no evidence supporting an award for actual damages, including costs

and fees, and found that punitive damages were unwarranted.  *Id.*

On appeal, Wells Fargo has abandoned the issue of standing.  *See Doc. 13*; *Doc. 69* of 07-

05-15473; *Doc. 20* at 3.[1]  The issues before the Court are: (i) whether the administrative freeze

constituted a willful violation of § 362(a)(3), and (ii) whether Wells Fargo's administrative freeze

was necessary under § 542.  *See Doc. 13* at 1-2.

## II.  Analysis

### A.  Standard of Review

On appeal, the Court "reviews the factual determinations of the bankruptcy court under

the clearly erroneous standard, and reviews the bankruptcy court's construction of [a statute] de

novo."  *Taylor v. IRS*, 69 F.3d 411, 415 (10th Cir. 1995) (citations omitted).  "Whether a party's

actions have violated the automatic stay is a question of law which is reviewed *de novo*.  We

review the bankruptcy court's finding that a creditor's action constituted a willful violation of the

stay for clear error."  *In re Diviney*, 225 B.R. 762, 769 (10th Cir. BAP 1998) (citations omitted).

A finding of fact is clearly erroneous only if the court has the definite and firm conviction that a

mistake has been committed.  *Id.*

### B.  Violation of § 362(a)(3)

Section 362(a)(3) provides that "[A] petition . . . operates as a stay, applicable to all

entities, of--any act to obtain possession of property of the estate or of property from the estate or

---

[1] To the extent that Wells Fargo argues that Jimenez did not have standing to assert her claims against
Wells Fargo, the Court disagrees.  *See, e.g.,* 11 U.S.C. § 362(a)(3); *In re Moreira*, 173 B.R. 965, 973
(Bankr.D.Mass 1994); *Matter of Schwartz*, 54 B.R. 321, 325-26 (Bankr.W.D.Wis. 1985).

to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3).[2] Wells Fargo argues

that it did not violate the "plain meaning" of § 362(a)(3) and that Supreme Court precedent

precludes a finding that it violated § 362(a)(3). *Doc. 3* at 17-24. I disagree.

First, in this factual situation, Wells Fargo violated the clear, express, and broad terms of §

362(a)(3). On July 8, 2005, Wells Fargo exercised control and denied Jimenez access to her

accounts, which were property of the bankruptcy estate. Such an action violates the fundamental

protections afforded to the debtor under the automatic stay. The analysis from *In re Flynn* is

persuasive:

> [P]erhaps the most fundamental problem with countenancing the
> freezing of the debtor's bank accounts before any judicial
> determination of the rights of the parties has been made is that it
> begs the critical question, assuming in advance the precondition for
> its validity . . . the freeze is essentially an extra-judicial temporary
> restraining order . . . . The placing of an administrative freeze on a
> debtor's bank account is undeniably an act designed to "exercise
> control over the property of the estate," and thus we conclude is an
> express violation of the automatic stay.

*In re Flynn*, 143 B.R. 798, 801 (Bankr.D.R.I. 1992) (citations omitted). In line with this

analogous reasoning, I too find that Wells Fargo's actions could not be characterized in any other

way but an express violation § 362(a)(3).

In addition, under these factual circumstances, Wells Fargo's reliance on *Strumpf* is

misplaced. *Strumpf* dealt with the issue of whether an administrative freeze by a depository bank

for the purpose of protecting a right to setoff was a violation of § 362(a)(7). *See Strumpf*, 516

U.S. at 16, 18-19. In *Strumpf*, an administrative freeze was placed on the debtor's checking

---

[2] Both parties agree that bank deposits are property of the bankruptcy estate. *See Doc. 13* at 7; *Doc. 17* at
9.

account for the remaining balance due on a loan in default.  *Id.* at 16.  In Jimenez's case, no such

debt existed.  In addition, here, Wells Fargo was not a creditor of Jimenez, Wells Fargo had no

valid setoff, and the issue presented involved § 362(a)(3).  Moreover, as the Supreme Court noted

in *Strumpf*, it decided a narrow issue: "The principal question for decision is whether [the bank's]

refusal to pay its debt to [the debtor] upon the latter's demand constituted an exercise of the

setoff right and hence violated the stay. . . . All that concerns us here is whether the refusal was a

*setoff*."  *Id.* at 19.  The decision in *Strumpf* should be read narrowly and limited to the "banker's

dilemma" of preserving creditor's setoff rights.  *In re Holden*, 236 B.R. 156, 163 (Bankr.D.Vt.

2001); *see also In re Buchferer*, 216 B.R. 332, 341 (Bankr.E.D.N.Y. 1998) ("*Strumpf* is, no

doubt, a truncated opinion.").  *Strumpf*  is readily distinguishable from the facts presented in

Jimenez's case.  Supreme Court precedent does not preclude a finding that Wells Fargo violated §

362(a)(3).  As such, the bankruptcy court's decision should be affirmed.

Next, Wells Fargo argues that it did not "willfully" violate § 362(a)(3).  In making this

argument, Wells Fargo concedes that under the majority view, once a creditor has notice of a

bankruptcy case, any intentional act that a court later determines violated the stay is a willful

violation.  *Doc. 13* at 24.  Wells Fargo contends that the bankruptcy court's "finding of 'willful

violation' continues to tar the reputation of the Bank," and offers five legal arguments as to why

the majority view is in error:

> (i)  Basic English grammar does not permit the majority view --*i.e.*,
> "willful" is an adjective that modified the noun "violation," as
> reflected in several Supreme Court cases involving analogous
> constructions. . . .
> (ii)  Good faith was relevant in assessing damages, prior to the
> enactment of § 362(h), coupled with the Supreme Court's
> admonition that pre-Code law is generally deemed to continue

absent a clearly contrary legislative intent.
(iii)  Section 362(h) *mandates* sanctions for "willful violations" and
Congress should be presumed not to have eliminated judicial
discretion, except for truly willful violations.
(iv)  The same 1984 act that added §362(h) enacted language in
§109(g) that precludes re-filing bankruptcy after dismissal for a
"willful failure" to obey a court order, and this has been construed
as requiring a deliberate and knowing failure.
(v)  Section 105 provides a discretionary remedy for non-willful
violations by creditors in appropriate circumstances, making it
unnecessary to twist the meaning of §362(h)'s mandatory provision
to achieve that end without any flexibility.

*Id.* at 24-27.

Having thoroughly reviewed these arguments and the applicable caselaw, I see no reason

to depart from the majority view.  Here, it cannot be disputed that Wells Fargo was aware that

Jimenez had filed for bankruptcy when it placed an administrative freeze on her accounts.  Actions

taken with actual knowledge of the automatic stay are willful violations.  *See In re Suarez*, 149

B.R. 193, 196 (Bankr.D.N.M. 1993); *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005);

*Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989);  *In re Manuel,* 212 B.R.

517, 519 (Bankr.E.D.Va. 1997); *In re Schafer*, 315 B.R. 765, 774 (Bankr.D.Colo. 2004).

"Whether the party believes in good faith that it had a right to the property is not relevant to

whether the act was willful."  *Id.*  Therefore, the bankruptcy court's conclusion that a willful

violation occurred should be affirmed.

## C.  The Turnover Provision: § 542

Wells Fargo argues that the administrative freeze placed on Jimenez's accounts was

required pursuant to the turnover provision in 11 U.S.C. § 542(b).  *See Doc. 13* at 8-17.  As

such, Wells Fargo claims it is not liable for a violation of § 362(a)(3).  *Id.*  Jimenez refers to Wells

Fargo's § 542 argument as a "paper tiger," noting that (i) Wells Fargo did not comply with § 542(b), (ii) caselaw does not support Wells Fargo's interpretation of § 542, and (iii) Wells Fargo fell within the § 542(c) safe harbor. *Doc. 17* at 16-22. I agree.

The language set forth within § 542(b) is clear and unambiguous. Section 542(b) provides:

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, **shall pay such debt to**, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b) (emphasis added). Under the circumstances presented, Wells Fargo simply could not have complied with § 542(b). Here, Wells Fargo did not pay a debt to the Trustee, nor was there any order from the Trustee for payment of the funds in Jimenez's accounts. Instead, what occurred was the placement of an administrative freeze on Jimenez's accounts, something clearly not contemplated by § 542(b). A freeze or a hold is not a turnover. Nothing in the language of § 542(b) even remotely hints at the proposition that depository banks may place a freeze on Chapter 7 debtor's accounts. Considering the clear language contained within § 542(b) and the lack of any caselaw to support Wells Fargo's position, the bankruptcy court's decision should be affirmed.[3]

---

[3] Notwithstanding this, the Bankruptcy Court's decision should also be affirmed under § 542(c). But for Wells Fargo's policy of randomly scanning bankruptcy filings, it would have been protected under § 542(c). *See* § 542(c) ("an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith . . . with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.")

D.  Attorney's Fees

Jimenez asks this Court to award her attorney's fees incurred in responding to this appeal. As support, Jimenez argues that the appeal was frivolous.  *See Doc. 17* at 24.  The issues presented in this appeal have not been addressed by the Tenth Circuit.  In addition, certain courts have ruled in favor of Wells Fargo's arguments in analogous proceedings.  *See, e.g.*, *In re Calvin*, 329 B.R. 589 (Bankr.S.D.Tex. 2005); *Sousa v. Bank of Newport*, 170 B.R. 492 (D.R.I. 1994). As such, I find that the appeal was far from frivolous.  *See* Federal Rule of Appellate Procedure 38.

Jimenez's other argument for attorney's fees is pursuant to § 362(h).[4]  *See Doc. 17* at 15. Section 362(h) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(h).  The Tenth Circuit has not addressed whether § 362(h) warrants an award of appellate fees for defending a non-frivolous appeal.  However, in making her argument Jimenez cites to *In re Walsh*, 219 B.R. 873 (9th Cir. BAP 1998).  The Court in *In re Walsh* held:

> Section 362(h) mandates damages, including an award of reasonable attorney's fees, when the stay is willfully violated.  The damages flowing from a stay violation include fees and costs incurred by the injured party in resisting a non-frivolous appeal.  As such, the bankruptcy court properly awarded appellate fees as part of the actual damages incurred by the debtor.

*Id*. at 878.  *In re Walsh* is distinguishable.  There, the Ninth Circuit decided whether a bankruptcy court erred in granting debtor attorney's fees incurred on appeal pursuant to § 362(h).  *Id*. at

---

[4] Which is now 11 U.S.C. § 362(k).

876.  In this proceeding, the bankruptcy court held an evidentiary hearing and found "no evidence

supporting an award of actual damages, including costs and attorneys' fees. . . ."  *Doc. 64* of  07-

05-15473.  A review of that determination is not before the Court.  Accordingly, because the

bankruptcy court concluded that Jimenez had no actual damages, she has no damages "flowing"

from the stay violation and is not entitled to an award of attorney's fees on appeal.

Wherefore,

IT IS HEREBY RECOMMENDED that the decision of the bankruptcy court be affirmed.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF
SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file
written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A
party must file any objections with the Clerk of the District Court within the ten day
period  if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE