## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**WELLS FARGO BANK, N.A.,**

        Appellant,

    vs.                              No. 1:07-cv-0123 MCA/CEG

**PILAR MERCEDES JIMENEZ,**

        Appellee.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Appellant Wells Fargo Bank, N.A.'s *Notice of Appeal* [Doc. 1-2], filed February 2, 2007, and upon Appellant's objections filed August 6, 2007 [Doc. 22] to the *Proposed Findings and Recommendation* of the United States Magistrate Judge [Doc. 21], filed July 23, 2007. Appellant ("Bank") appeals the Bankruptcy Court's *Order Denying Defendant's Motion for Summary Judgment and Granting Plaintiff's Cross Motion for Summary Judgment* [Doc. 1-6; Doc. 15 in Adversary Proceeding 05-01150-m], filed December 21, 2005. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a), and, having reviewed the briefs of the parties and the record on appeal, reverses the Bankruptcy Court and declines to accept the recommendation of the Magistrate Judge.

## I.    BACKGROUND

Appellee Pilar Mercedes Jimenez ("Debtor") filed a voluntary Chapter 7 bankruptcy petition on July 5, 2005. As of the date of her petition, she maintained a checking account

and a savings account at Bank.   The checking account had a balance of $5,173.33 and the savings account had a balance of $649.18.   Debtor listed the checking account on her Schedule B, but described it has having a balance of $4,000.   On her Schedule C, she claimed the checking account as exempt property under 11 U.S.C. §522(d)(5).   Debtor did not initially schedule the savings account.

On July 8, 2005, Bank learned that Debtor had filed for bankruptcy and immediately placed an "administrative freeze" on her account balances.   Bank is not a creditor of the Debtor and did not receive notice from the Court.   Rather, Bank has a policy whereby it seeks out knowledge of bankruptcy filings and places an administrative freeze on accounts held by customers who Bank ascertains have filed bankruptcy.   Bank's policy, which apparently is in force nationwide, is facilitated by the federal courts' CM/ECF system, which provides subscribers with virtually instantaneous notice of court filings.

The same day Bank froze Debtor's accounts, it sent letters regarding each account to the Chapter 7 Trustee in Debtor's case.   The letters stated, in part:

> [Bank] has received notification of [Debtor's] bankruptcy petition. Sections 541 and 542 of the Bankruptcy Code require [Bank] to act in good faith to preserve the status quo and to follow your directions with regard to property of the estate. When [Bank] received notice, it checked the value of the debtor(s)'s account, less identifiable Social Security payments, on the filing date and the notice date.  [Bank] understands that the smaller of these figures...became property of the bankruptcy estate (as such, the "Estate Funds").  The Estate Funds are now in bankruptcy status, which means they are payable only to or upon your order.
>
> The Estate Funds will remain in bankruptcy status until the earlier of receipt of direction from you on their disposition or September 12, 2005, which is 31 days after the scheduled First Meeting of Creditors.  If you wish [Bank] to take any other action with the Estate Funds, please check the appropriate boxes below and return a signed

copy of this letter to [the Bank's Operations Manager].

Attached to Bank's letters to the Trustee was a form listing four options from which the

Trustee could select.  The form stated, in part:

> [Trustee] hereby directs [Bank] to take the following action with regard to Estate Funds:
>
> ☐      Release Estate Funds totaling $_____ to the customer.
>
> ☐      Turn over Estate Funds totaling $_____ to the Trustee.
>
> ☐      Take no action with the balance of the Estate Funds until such funds are not part of the Bankruptcy Estate.
>
> ☐      Other (please give specific instructions: _____
>
> Signed: _____, Bankruptcy Trustee

Bank also sent letters to Debtor's counsel, which stated in part:

> [Bank] has received notification of [Debtor's] bankruptcy filing.  When [Bank] received notice, it checked the value of [Debtor's] account, less identifiable Social Security payments, on the filing date and the notice date.  The smaller of these figures...became property of the bankruptcy estate (the "Estate Funds").  The Estate Funds are now in bankruptcy status, which means they are no longer available to [Debtor].
>
> [Bank] is required by operation of Sections 541 and 542 of the Bankruptcy Code to act in good faith to preserve the status quo and so must follow the trustee's direction with regard to the Estate Funds.  Accordingly, [Bank] has asked for instructions from the trustee.  As you know, the trustee has 30 days from the first meeting of creditors to object to a claim of exemption for the Estate Funds and ownership of claimed exempt property remains with the bankruptcy estate until such time passes or the trustee directs otherwise.
>
> [Bank] is prepared to immediately follow the trustee's direction regarding the Estate Funds and you may be able to expedite the trustee's decision.  Alternatively, please provide [Bank] with a copy of [Debtor's] claims exemptions for funds that should re-vest in [Debtor] at the end of the objection period.

Debtor initiated an adversary proceeding against Bank on July 11, 2005, after her counsel was unsuccessful in persuading Bank to release the funds to her. Debtor amended her schedules on July 14, 2005 to add the savings account and to claim exemptions for the full value of both accounts.

Debtor's *Complaint for Turnover of Property and Damages* alleged that Bank's administrative freeze and failure to honor checks drawn on the checking account violated the automatic stay. Debtor petitioned the Bankruptcy Court to order Bank to turn over the funds in the accounts to Debtor, and to award her compensatory and punitive damages, as well as attorney's fees. Bank moved for summary judgment on July 14, 2005.

On July 15, 2005, the Trustee authorized Bank to release $4,000 to Debtor. Bank accordingly reduced its hold on the checking account to permit Debtor to access up to $4,000. The parties nevertheless continued to litigate the propriety of the administrative freeze, and Debtor filed a response to Bank's motion, as well as her own cross motion for summary judgment on July 23, 2005.[1]

On December 21, 2005, the Bankruptcy Judge issued a Memorandum Opinion and an Order denying Bank's motion for summary judgment and granting Debtor's motion for summary judgment. Though the Bankruptcy Court found in favor of Debtor regarding Bank's liability for violating the automatic stay, it subsequently dismissed her claim for

---

[1]Meanwhile, the bankruptcy case marched on. The creditors' meeting was held and concluded on August 12, 2005. The Trustee reported on August 17, 2005, that no property was available for distribution from the estate, other than exempt property, that she had abandoned all scheduled assets, and that Debtor's estate had been fully administered.

4

damages.  After holding an evidentiary hearing, the Bankruptcy Court found that there was no evidence to support an award of actual damages and that punitive damages were unwarranted.[2]  The Bankruptcy Court's *Final Order Dismissing Plaintiff's Claims* was entered on January 22, 2007.

Bank appealed the Bankruptcy Court's summary judgment ruling.  This Court referred the matter to the Magistrate Judge for recommended disposition.  The Magistrate Judge recommended affirming the decision of the Bankruptcy Judge.  [Doc. 21.]  Bank filed objections to the Magistrate Judge's proposed disposition.  [Doc. 22.]

## II.    STANDARD OF REVIEW

Bank appeals from a grant of summary judgment in favor of the Debtor.  Bank has also filed timely objections to the Magistrate Judge's *Proposed Findings and Recommended Disposition*.

Timely and specific objections to a Magistrate Judge's report trigger a *de novo* review by the District Judge.  28 U.S.C. § 636(b)(1); *In re Key Energy Res. Inc.*, 230 F.3d 1197, 1200 (10th Cir. 2000).  In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a), the district court applies the same standards of review that govern appellate review in other cases.  *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005).  A grant of summary judgment is reviewed de novo, applying the same legal standard as the court below.  *Byers v. Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[2]The Bankruptcy Court's ruling regarding damages has not been appealed.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

This appeal presents a question of law:  Did Bank's imposition of an "administrative freeze" that prevented Debtor from accessing the deposit accounts in question violate the automatic stay?  Whether a party's actions violate the automatic stay is a question of law that is reviewed de novo.  *In re Taumoepeau*, 523 F.3d 1213, 1218 (10th Cir. 2008).  Before reaching this question, however, the Court must consider the matter of Debtor's standing.

## III.   ANALYSIS

### A.   Does Debtor have standing to assert a violation of the automatic stay?

Debtor's standing to assert a violation of the automatic stay is a threshold issue. Standing is a component of the "Cases" or "Controversies" requirement for federal jurisdiction and may be raised by any party at any time, including *sua sponte* by the Court. *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).  Whether a plaintiff, Debtor in this case, has standing is a legal question upon which Debtor bears the burden.  *Woodruff*, 512 F.3d at 1288.  The Bankruptcy Court held that Debtor does have standing.  The Magistrate Judge concluded that Bank had abandoned the question of Debtor's standing.  For the reasons set forth below, this Court believes that the Bankruptcy Court was in error and that Debtor does not have standing to assert a violation of the automatic stay under the facts of this case.

To establish standing, the plaintiff must show:  (1) she has suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely

6

that the injury will be redressed by a favorable decision. *Woodruff*, 512 F.3d at 1288. Debtor's asserted injury is that Bank's administrative freeze deprived her of the use of "her property" until the deadline for objecting to exemptions expired. Debtor claims that, without access to her accounts, she was without means to feed her family or pay bills after filing for bankruptcy. According to Debtor, her claim that the bank accounts were exempt property was to be presumed valid in the absence of any objection to the claim and that the freeze deprived her of "her property" without due process of law.

The flaw in Debtor's argument is in the premise that the bank accounts continued to belong to her after she filed for bankruptcy. The filing of a bankruptcy creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Debtor's bank accounts and any balances therein "unquestionably" became property of the estate upon the filing of the petition in bankruptcy. *In re Figueira*, 163 B.R. 192, 194 (Bankr. D. Kan. 1993) (citing 11 U.S.C. § 541(a)(1)); *see also Sousa v. Bank of Newport*, 170 B.R. 492, 494 (D. R.I. 1994). Debtor had a duty to surrender the accounts to the trustee, if not physically, then constructively. 11 U.S.C. § 521(a)(4) (stating that "debtor shall...surrender to the trustee all property of the estate..."); *In re Figueira*, 163 B.R. at 194. The accounts were thus no longer available for her personal use after she filed her petition.

At the time administrative freeze was imposed, the Trustee had not yet released the funds in the accounts to Debtor, nor given Bank permission to pay Debtor. Because Debtor could not have accessed the accounts without the Trustee's permission—at least, not

consistently with her obligation to surrender the accounts to the Trustee—the Court concludes that she suffered no injury caused by the administrative freeze.

The Court's conclusion that Debtor did not suffer an injury in fact is supported by the United States Supreme Court case of *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 2886 (1995). In *Strumpf*, the Supreme Court described the nature of a bank account: A bank account does not consist of "money belonging to the depositor and held by the bank." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21 (1995). Rather, a bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Strumpf*, 516 U.S. at 21. Thus, the debtor's claim that a bank's administrative hold on its account violated the automatic stay "rests on the false premise that [bank's] administrative hold took something from [debtor], or exercised dominion over property that belonged to [debtor.] *Strumpf*, 516 U.S. at 21. Likewise, Debtor's claim of standing here rests on the false premise that the bank accounts in question consisted of funds that belonged to her and that the administrative freeze deprived her of them. In fact, the bank accounts consisted of a debt owed by Bank to Debtor. After Debtor filed for bankruptcy, those debts became assets of the bankruptcy estate.

Debtor does not dispute that the bank accounts were property of the bankruptcy estate. She nevertheless contends that she has standing to prosecute the alleged automatic stay violation because she claimed the accounts as exempt. The Bankruptcy Court agreed, holding that "[w]hen [Bank] froze the accounts, [Debtor] had exercised her right to exempt the account funds; therefore, [Debtor] had a direct economic interest in the funds, which was

adversely affected by [Bank's] administrative freeze." *In re Jimenez*, 335 B.R. 450, 455 (Bankr. D.N.M. 2005). The Court does not agree that Debtor's claim of exemption confers standing in this case.

A debtor may prevent certain property from being distributed to creditors by claiming it exempt. 11 U.S.C. §522; *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992). As the Bankruptcy Court observed, an exemption "is an interest of the debtor carved out of the bankruptcy estate for the benefit of the debtor and thereby shielded from creditors' claims." *In re Jimenez*, 335 B.R. at 455 (quoting *In re Hodes*, 402 F.3d at 1010) (quotation marks omitted).

However, property is not summarily removed from the bankruptcy estate immediately upon the debtor's claim of exemption. Property that is entitled to be exempted is initially regarded as estate property until it is claimed and distributed as exempt. *In re McLain*, 516 F.3d 301, 315 (5th Cir. 2008); *see also In re Barksdale*, 281 B.R. 548, 551 (Bankr. D.N.J. 2002) ("At the commencement of the case, the property of the estate includes property that the debtor may claim as exempt."); *In re Murray*, 249 B.R. 223, 231 (Bankr. E.D.N.Y. 2000) ("Property is not exempt by fiat of the debtor, but only through a process of compliance with the statutory disclosures and then by order of the bankruptcy court[.]"). Thus, property that the debtor claims is exempt does not cease being property of the estate until the exemption is allowed or until the time for making objections expires. *See In re Villegas*, 364 B.R. 781, 785 (Bankr. D.N.M. 2007) (stating that, before time for making exemptions expired, property debtor claimed was exempt was still part of the bankruptcy estate).

Debtor has cited no persuasive authority for the proposition that she was entitled to use estate property before it was distributed as exempt, merely because she had claimed an exemption. Indeed, if such a proposition were allowed, it would defeat the procedure set forth in the Bankruptcy Rules for the orderly determination of claims of exemption.

Bankruptcy Rule 4003 prescribes the procedure for making and resolving objections to a debtor's claimed exemptions:

> **(b)  Objecting to a Claim of Exemptions**. A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension. Copies of the objections shall be delivered or mailed to the trustee, the person filing the list, and the attorney for that person.

> **(c) Burden of Proof.** In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

Bankr. Rule 4003 (a), (b).

These provisions clearly contemplate judicial determination of a claim of exemption in the event that there are objections. Before that time, the claim of exemption is exactly that—a claim. If the debtor were permitted to use estate property before the claim of exemption was allowed, either by order of the court or operation of law, the procedure for determining exemptions could easily be thwarted. Debtors would have incentive to exhaust the assets they claimed were exempt as quickly as possible before objections were lodged.

In this case, the time for objecting to Debtor's claimed exemptions had not yet expired when Bank imposed the administrative freeze. The bank accounts were still property of the

estate at that time, which Debtor was without legal entitlement to access.  Debtor's claim of exemption alone, therefore, did not confer standing to challenge an alleged violation of the automatic stay.

Despite recognizing that the accounts were property of the estate, the Bankruptcy Court concluded, based upon Rule 4003(c), that Debtor's claim of exemption was presumed valid unless a party in interest objected.  *In re Jimenez*, 335 B.R. at 455.  However, Rule 4003(c) is simply a statement that the objecting party bears the burden of proof.  Standing is not conferred on Debtor in these circumstances merely because the objecting party would bear the burden of proof at a hearing to determine the validity of her claimed exemptions.[3]

It is true that property claimed exempt becomes exempt by operation of law if no timely objection is made.  *Taylor*, 503 U.S. at 643–44; 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt...is exempt.").  This does not occur, however, until thirty days after the meeting of creditors.  Bankr. Rule 4003(b); Debtor has cited no authority for the proposition that property is exempt until an objection is made, and the Court is not aware of any.  To the contrary, property the debtor claims as exempt remains part of the estate, and does not become exempt, until the time for objecting to exemptions expires.  *In re Villegas*, 364 B.R. at 785.

This does not mean, however, that a Chapter 7 debtor's claim of exemption would never be sufficient to confer standing.  In *In re Moreira*, 173 B.R. 965 (Bankr. D. Mass.

---

[3]As far as the record reflects, no objections were made to Debtor's claimed exemptions and no hearing to determine the exemptions was held.  Rather, before the time for making objections expired, $4,000 was distributed from the checking account to Debtor upon the Trustee's authorization.

1994), for example, the bankruptcy court held that the debtor had standing to bring an adversary proceeding against a credit union that froze accounts she claimed were exempt. *In re Moreira*, 173 B.R. 965, 973 (Bankr. D. Mass. 1994). The Bankruptcy Court cited *Moreira* as support for the conclusion that the Debtor has standing to pursue an alleged violation of the automatic stay in this case. *Moreira* is distinguishable, however, because it involved a fact that is not present here: the credit union claimed a right of setoff in the same funds that the debtor claimed were exempt. Furthermore, it is not entirely clear that the court's conclusion regarding standing was specifically directed at the automatic stay. The opinion is primarily concerned with the validity of the setoff. *In re Moreira*, 173 B.R. at 968–72. Under the Bankruptcy Code, a "debtor may...recover a setoff to the extent that the debtor could have exempted such property..." 11 U.S.C. 522(h). The Court in *Moreira* apparently read this provision as grounds for the debtor to bring an adversary proceeding to challenge the setoff and to assert a violation of the automatic stay against the credit union. *In re Moreira*, 173 B.R. at 973. The credit union made a claim to the funds that was adverse to the debtor's claim to the same funds. The debtor in *Moreira* therefore had a colorable claim of standing. By contrast, Bank here does not claim that it has any ownership interest or claim of entitlement to the funds that Debtor claims are exempt.

   *In re Wright*, 156 B.R. 549, 552 (Bankr. N.D.Ill. 1992), also cited below, does not persuade this Court that Debtor here has standing. In that case, the court held that the debtor did not have standing to seek damages for an alleged violation of the automatic stay resulting from the Internal Revenue Service's postpetition receipt of funds. *In re Wright*, 156 B.R.

549, 552 (Bankr. N.D.Ill. 1992).  The court reasoned that, if the money at issue had been released by the IRS, as debtor claimed the IRS had a duty to do, the money still would not have been at debtor's disposal, but instead would have been part of the bankruptcy estate. *In re Wright*, 156 B.R. at 553.  The court conjectured in dicta that the debtor "might" have standing if she were to claim an exemption in the funds.  *In re Wright*, 156 B.R. at 554. However, there was no occasion for the court to elaborate upon the circumstances under which standing would arise.

*Matter of Schwartz*, 54 B.R. 321, 325 (Bankr. W.D.Wis. 1985), cited below, is also inapposite.  In *Schwartz*, the debtor had standing under section 362(h) because he alleged a "financial injury to himself as a result of a violation of the automatic stay."  *Matter of Schwartz*, 54 B.R. 321, 325 (Bankr. W.D.Wis. 1985).  The financial injury arose from a prepetition transfer of funds from the debtor's business to the defendant judgment creditor. *Matter of Schwartz*, 54 B.R. at 322–23.   Sections 522(h) and (i) of the Bankruptcy Code—provisions that are not implicated in this case—expressly vest the debtor with avoidance and recovery powers.  *Matter of Schwartz*, 54 B.R. at 325.  By contrast, Debtor here has pointed to no statutory provision that vests her with authority to pursue the alleged violation of the stay.  Furthermore, unlike the debtor in *Wright*, Debtor here has not suffered a financial injury as a result of any alleged violation of the automatic stay.  Debtor's "injury" is a result of the filing of her bankruptcy petition, an event that divested her of authority to access the accounts in question.

The Bankruptcy Court below expressed concern that "under Wells Fargo's view, the

Debtor could lose access to account funds and the protection of the stay with respect to those funds for a significant period of time [until the time for objecting to exemptions expired]." *In re Jimenez*, 335 B.R. 456. As discussed above, however, Debtor was not entitled to access those funds once she filed for bankruptcy. Funds in a debtor's bank account at the filing of the filing of a petition are subject to turnover to the trustee upon request. 11 U.S.C. 542(b); *In re Spencer*, 362 B.R. 489, 493–94 (Bankr. D.Kan. 2006). A bank that receives notice that an account holder has filed for bankruptcy is likely to freeze the account. *See In re Spencer*, 362 B.R. at 493. Debtors seeking to avoid the unpleasant results that may occur from a hold on account funds should withdraw the funds prior to filing their petitions or be certain that any checks written pre-petition have cleared before they file their case. *See In re Spencer*, 362 B.R. at 494.

The Bankruptcy Court also opined that failure to confer standing on Debtor would result in a situation whereby the Chapter 7 trustee "could bring an action for stay violation regarding the account funds before the expiration of the period for objections to exemptions, and [Debtor] could bring an action for stay violation regarding the account funds after the expiration of the period for objections to exemptions." *In re Jimenez*, 335 B.R. at 456. I do not accept the Bankruptcy Court's reasoning because, first, it assumes its conclusion, which is that a violation of the stay has occurred. Second, if a Chapter 7 debtor has no standing to prosecute a freeze on her accounts, that is simply the result of having filed for bankruptcy,

not nefarious conduct by the bank.[4]   This Court agrees with the reasoning of the Bankruptcy Court for the District of Columbia, which has stated:   "Once debtor's bank account rights have become exempt property, the debtor can pursue enforcement of [Bank's] contractual obligation (instead of pursuing contempt). [The Bankruptcy Court] likely would lack subject matter jurisdiction over such a proceeding under 28 U.S.C. § 1334(b) because the dispute would not have any apparent impact on the administration of the estate." *In re Williams*, 249 B.R. 222, 223 (Bankr. D.D.C. 2000).

In sum, the Court concludes that Debtor does not have standing to pursue an alleged violation of the automatic stay under the facts of this case.   When Debtor filed her petition for bankruptcy, the accounts became property of the estate and she was required to relinquish them to the Trustee.   Debtor's claim of exemption did not confer standing because, when the administrative freeze was in force, the time for objecting to exemptions had not yet expired and the accounts should have remained inaccessible to her in any event until her claim of exemption was allowed.

## B.      Did a violation of the automatic stay occur?

For purposes of completeness, and because both the Bankruptcy Judge and the Magistrate Judge reached the merits of the automatic stay violation issue, this Court will

---

[4]The Bankruptcy Court also concluded that denying Debtor standing to pursue this case would run contrary to the purpose of the automatic stay, which is to protect debtors.  *In re Jimenez*, 335 B.R. at 456 (citing *In re Patterson*, 967 F.2d 505, 512 n.9 (11th Cir. 1992)).  While it is true that an important purpose of the automatic stay is to protect debtors from collection efforts and harassment, *i.e.*, to give them "breathing room," this is only one aspect of the automatic stay.  As discussed in more detail below, the automatic stay also protects the estate and allows for liquidation to proceed in an orderly manner.

explain below why, even if Debtor has standing, no violation of the automatic stay occurred under the facts of this case.  The Bankruptcy Court and the Magistrate Judge both concluded that Bank violated the automatic stay by placing an administrative freeze on the accounts. The Bankruptcy Court reasoned that by denying Debtor access to her account funds, the Bank exercised control over her property in express violation of 11 U.S.C. § 362(a)(3).  *In re Jimenez*, 335 B.R. at 460.  This Court does not agree.

Debtor asserts that Bank violated section 362(a)(3) of the Bankruptcy Code.  Section 362(a)(3) states that the filing of a petition in bankruptcy operates as a stay of:

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

11 U.S.C. 362(a)(3).  Bank admits that it "has procedures by which 'administrative holds' are placed on certain funds held in deposit accounts known to be part of a Chapter 7 bankruptcy proceeding."  [Doc. 13 at 14.]   A hold was placed on Debtor's accounts in accordance with this procedure.[5]

In this Court's view, Bank's actions did not violate section 362(a)(3).  The legislative history explains the purpose of section 362(a)(3), which is:

> to prevent dismemberment of the estate.  Liquidation must proceed in an orderly fashion.  Any distribution of property must be by the trustee after he has had an opportunity to familiarize himself with the property available for distribution.

---

[5]This is not the first time that this practice by Bank has been challenged.  *See In re Calvin*, 329 B.R. 589 (Bankr. S.D.Tex. 2005).  *In re Calvin* was an action very similar to this one, in which a Chapter 7 debtor, who apparently was subjected to the same procedure as appellee in this case, attempted to have Wells Fargo Bank, N.A. held in contempt and sought damages for an alleged violation of the automatic stay.  The court in *In re Calvin* held that the debtor did not have standing to pursue an alleged automatic stay violation, and that Wells Fargo Bank, N.A.'s practice of freezing bank accounts did not violate the automatic stay. *In re Calvin*, 329 B.R. 589.

H.R. Rep. No. 95-595, at 341 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6298; S. Rep. 95-989, at 50, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836.  In this case, Bank did not take any action to interfere with the orderly liquidation of the estate, or to prevent the Trustee from evaluating the available assets and determining proper distribution.  Moreover, Bank did not "obtain possession of property of the estate" or "exercise control over property of the estate."  To the contrary, Bank relinquished control of the accounts to the Trustee.  Although the accounts were unavailable to the Debtor (and presumably unavailable to any one else that may have attempted to access them, such as creditors or holders of checks written on the checking account), they were not unavailable to the Trustee.  It is undisputed that Bank immediately contacted the Trustee upon receiving notification of the bankruptcy, acknowledged that the funds represented by the accounts were property of the estate, and indicated that it stood ready to follow the Trustee's instructions regarding the funds.  It is also undisputed that Bank promptly complied with Trustee's instructions regarding the funds—it immediately released $4,000 to Debtor when instructed to do so by the Trustee.

The Court further finds that *Strumpf* lends additional support for the conclusion that Bank's actions did not run afoul of section 362(a)(3).  In *Strumpf*, the United States Supreme Court considered the question of whether an administrative freeze of a bank account violated section 362(a)(3) and concluded that it did not.  *Strumpf*, 516 U.S. at 21.  As discussed above, the Supreme Court first observed that a bank account consists not of money belonging to the depositor and held by the bank, but rather a promise to pay, from the bank to the depositor.  *Strumpf*, 516 U.S. at 21.  Thus, a bank's "temporary refusal to pay was neither a

taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise."  *Strumpf*, 516 U.S. at 21.

The Court believes that the reasoning of *Strumpf* is applicable.  The bank accounts at issue here constituted a promise to pay, from Bank to Debtor.  The administrative freeze amounted to a refusal to perform that promise to the Debtor—not an exercise of control over Debtor's property.

The Bankruptcy Court, as well as the Magistrate Judge, concluded that *Strumpf* is inapplicable to this case because *Strumpf* involved a claim of setoff, and this case does not.  They also characterized as dicta the Supreme Court's statements regarding the nature of a bank account.  This Court disagrees with both these conclusions for the following reasons.  First, the Supreme Court considered whether the administrative hold imposed by the bank constituted a "setoff" within the meaning of section 362(a)(7), which stays actions to "setoff any debt owing to the debtor that arose before commencement of the case."  *Strumpf*, 516 U.S. at 18–19.  After concluding that the hold was not a setoff, and therefore did not violate section 362(a)(7), the Supreme Court went on to consider the respondent's "additional contentions that the administrative hold violated §§ 362(a)(3) and 362(a)(6)."  *Strumpf*, 516 U.S. at 21.  The Supreme Court quoted the text of section 362(a)(3) and concluded that the administrative hold imposed by the bank did not violate those automatic stay provisions, either.  *Strumpf*, 516 U.S. at 21.  Thus, the Bankruptcy Court's conclusion that "[s]ection 362(a)(3) was not at issue in *Strumpf*" is simply incorrect.

Second, the Supreme Court's statement regarding the nature of bank accounts should

not be disregarded because it is perceived as dicta.[6]  The characterization of bank accounts as promises to pay, rather than money, was integral to the Supreme Court's holding that the administrative hold did not violate the automatic stay.  I note that Justice Scalia went so far as to suggest that the result might be different if bank accounts consisted of money belonging to the depositor.  *Strumpf*, 516 U.S. at 21 ("[Debtor's] view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank.").

The Bankruptcy Court held that Bank could not rely on the turnover provision of section 542 as "justification" for freezing the account.  *In re Jimenez*, 335 B.R. at 461–62. However, it is not a question of whether Bank is "justified" by section 542—section 542 *requires* Bank to make payment to the Trustee or to her order.  11 U.S.C. 542(b); *In re Spencer*, 362 B.R. at 493–94.  *Strumpf* instructs that the automatic stay provisions should not be given an interpretation that creates a conflict with other provisions in the Bankruptcy Code.  As explained in *Strumpf*, section 362(a)(7) makes it a violation of the automatic stay to exercise a setoff against the debtor.  Section 542(b), which concerns turnover of property to the estate, requires a bankrupt's debtors to pay to the trustee (or on her order) any "debt that is matured, payable on demand, or payable on order...except to the extent that such debt

---

[6] Even if a statement by the United States Supreme Court could be characterized as dicta, courts are not free to disregard it.  The Court is bound by Supreme Court dicta almost as firmly as it is by outright holdings.  *United States v. Nelson*, 383 F.3d 1227, 1232 (10th Cir. 2004).  Furthermore, dicta or not, the statement that a bank account is a promise to pay, from the bank to the depositor, is a correct statement of law.  *Bank of Marin v. England*, 385 U.S. 99, 101 (1966) (collecting cases); *see also Aspinall v. United States*, 984 F.2d 355, 358 (10th Cir. 1993) (under Colorado law, money deposited in account becomes property of the bank, creating a chose in action in favor of the depositor); *In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243, 1246 (9th Cir. 1997) (same, California law).  The Court is not aware of any law to the contrary, from New Mexico or elsewhere.

may be offset under section 553 of this title against a claim against the debtor." *Strumpf*, 516

U.S. at 20 (quoting 11 U.S.C. § 542(b)).  Section 553(a), in turn sets forth a general rule, with

certain exceptions, that any right of setoff that a creditor possessed prior to the debtor's filing

for bankruptcy is not affected by the Bankruptcy Code.  As stated in *Strumpf*:

> It would be an odd construction of §362(a)(7) that required a creditor with a right of setoff to do immediately that which §542(b) specifically excuses it from doing as a general matter:  pay a claim to which a defense of setoff applies.

*Strumpf*, 516 U.S. at 20.

Although *Strumpf* was concerned with the exception of section 542(b), the reasoning

applies equally here.  Section 542(b) requires Bank to pay debts to the Trustee or to her

order, except, as noted in *Strumpf*, to the extent the Bank claims a right of setoff.  *Strumpf*,

516 U.S. at 20 (quoting 11 U.S.C. § 542(b)); *see also In re Williams*, 249 B.R. at 223 (even

where Chapter 7 debtor claims bank account is exempt, any turnover of account must be to

trustee, not to debtor).  Thus Bank, which owed a debt to Debtor but did not claim a setoff,

was required to pay (turnover) the money represented by the accounts to the Trustee or to her

order.   Section 542(b) does not authorize Bank to make payment to Debtor.   Debtor

nevertheless asserts that Bank violated the automatic stay—section 362(a)(3) to be exact—by

refusing to allow her to access the accounts.  Guided by the reasoning of *Strumpf*, this Court

declines to give section 362(a)(3) an interpretation that would place it in conflict with section

542(b).  In other words, it would be an "odd construction" if Bank's refusal to pay Debtor

violated section 362(a)(3) when section 542(b) requires Bank to pay the Trustee.

Finally, for several reasons, the Court is not persuaded by the reasoning of *In re*

*Flynn*, 143 B.R. 798, 799 (Bankr. D.R.I. Vt. 1992), which was relied upon by both the

Bankruptcy Court and the Magistrate Judge to conclude that the freeze constituted a violation

of the automatic stay.   In *In re Flynn*, a credit union bank with an alleged right of setoff

placed an administrative freeze on the Chapter 7 debtors' bank accounts, prohibiting them

from accessing the funds.   *In re Flynn*, 143 B.R. 798, 799 (Bankr. D.R.I. Vt. 1992).   The

debtors moved for an order holding the credit union in contempt for a willful violation of the

automatic stay.   *In re Flynn*, 143 B.R. at 799.   The bankruptcy court ruled that the credit

union had violated the automatic stay by, among other things, imposing a freeze on debtors'

accounts.   The court in *In re Flynn* reviewed the arguments on both sides of the then ongoing

controversy regarding whether a bank with a right of setoff could refuse to allow the debtor

to access its accounts, and sided with those jurisdictions and commentators that concluded

that such an action would violate the automatic stay.   *In re Flynn*, 143 B.R. at 799–802.   *In*

*re Flynn* was decided several years before *Strumpf*, which subsequently resolved this so-

called "banker's dilemma" contrary to the result *In re Flynn*.   The analysis of *In re Flynn* is

therefore of little value to the analysis of the issue in the present case.

The Bankruptcy Court also apparently found significance in the manner in which

Bank learned of Debtor's bankruptcy, stating that because Bank was not a creditor, it "would

not have gained actual knowledge of the filing had it not searched the electronic docket

system for filings by account holders."   *In re Jimenez*, 335 B.R. at 462.   The Bankruptcy

Court further reasoned that were it not for the alleged practice of searching electronic

dockets, Bank would be protected by the safe harbor provision of section 542(c).[7]  *In re Jimenez*, 335 B.R. at 462.

The Court disagrees with this reasoning.  Banks may learn of an account holder's bankruptcy in any number of ways, both official and unofficial.  If the bank is a creditor, it should receive official notice through the administration of the case.  Bankr. Rule 2002.  If the bank is not a creditor, then the trustee must give notice.  Bankr. Rule 2015(a)(4) ("A trustee...shall...as soon as possible after the commencement of the case, give notice of the case to every entity known to be holding money or property subject to withdrawal or order of the debtor, including every bank...").  Even prior to the advent of electronic filing, banks could obtain unofficial notice of bankruptcy filings through, for example, credit bureau bulletins.  *See, e.g.*, *In re Carpenter*, 14 B.R. 405, 406 (Bankr. M.D. Tenn. 1981).

Debtor's contention that Bank is at fault because it "went looking" for bankruptcy filings is without merit.  [Doc. 17 at 28.]  Notice of the bankruptcy filing need not be formal or official to put a creditor on notice.  *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007) (citing *Greentree Servicing, LLC v. Taylor*, 369 B.R. 282, 286 (S.D. W.Va. 2007) (collecting cases).  Though the Court expresses no opinion either approving or disapproving of Bank's policy, it concludes that it is immaterial how Bank came into its knowledge of Debtor's case.  The undisputed fact is that Bank did know and section 542(c) therefore is inapplicable.

Because the Court concludes that a violation of the automatic stay did not occur, it

---

[7] Section 542(c) provides some protection to an entity that, without actual knowledge or actual notice of the commencement of the case, pays a debt owing to the debtor to someone other than the trustee.  11 U.S.C. § 542(c).

does not reach the parties' arguments regarding whether the violation was "willful" under section 362(h).

## IV.    CONCLUSION

For the reasons set forth above, the Court rejects the *Proposed Findings and Recommendation* of the United States Magistrate Judge [Doc. 21], filed July 23, 2007.  The Bankruptcy Court's *Order Denying Defendant's Motion for Summary Judgment and Granting Plaintiff's Cross Motion for Summary Judgment* [Doc. 1-6; Doc. 15 in Adversary Proceeding 05-01150-m], filed December 21, 2005 is **REVERSED.**    The case is **REMANDED** to the Bankruptcy Court with instructions to enter an order denying Debtor's motion for summary judgment and granting summary judgment to Bank.

**SO ORDERED** this 6th day of August 2008**,** in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge